**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GREGORY JAMES JILES,

        Petitioner,

v.                                    Case No. 08-11258

BARRY D. DAVIS,

        Respondent.

_____/

### OPINION AND ORDER DENYING "PETITION FOR WRIT OF HABEAS CORPUS" AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Gregory James Jiles, a state inmate incarcerated at the Newberry Correctional Facility in Newberry, Michigan, filed this pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 24, 2008. The Government answered on October 1, 2008. In his pro se petition, Petitioner raises claims concerning the trial court's conclusions of law, the sufficiency of the evidence, the effectiveness of appellate counsel, and prosecutorial misconduct. Having fully considered the parties' positions and briefs, the court will deny the petition and will decline to issue a certificate of appealability.

## I. BACKGROUND

Following a bench trial in Wayne County Circuit Court in 2004, Petitioner was convicted of second-degree murder pursuant to Michigan Compiled Laws § 750.317 for killing Kimberlyn Mason. After several hours of heavy drinking and smoking marijuana, the Petitioner and five others left a friend's home in two separate cars. (1/20/04 Trial Tr. at 97-102.) Petitioner was the only passenger in a car driven by David Gibson, and

Mason was with Kimberly McKinney, Neard Siggers, and a man called "Tay" in McKinney's car. (*Id.* at 70-72.) Mason was in the backseat. (*Id.*) After driving around and consuming more alcohol, the two cars stopped side by side in a Detroit neighborhood to determine where to go next. (*Id.* at 105-06.) Some sort of argument occurred and Gibson swore at McKinney and spat on her car. (1/21/04 Trial Tr. at 40.) Shortly after that, Petitioner got out of Gibson's car, got a gun out of the car's trunk, and walked in between the two cars. (1/20/04 Trial Tr. at 82, 1/21/04 Trial Tr. at 32.) Petitioner told McKinney, whose window was down, "I should shoot you, bitch," and pointed the gun at her head. (1/20/04 Trial Tr. at 85.) Around twenty seconds later, McKinney and Gibson heard two gunshots, and Gibson saw Petitioner holding the gun immediately afterwards. (1/20/04 Trial Tr. at 83, 1/21/04 Trial Tr. at 34.) Petitioner got back into Gibson's car, and the two cars drove away with Gibson following Siggers's car. (1/20/04 Trial Tr. at 85; 1/21/04 Trial Tr. at 34-35.) Gibson testified that Petitioner admitted firing the gun into the car but told him that he didn't think he hit anybody. (1/21/04 Trial Tr. at 35, 39.) Gibson also testified that Petitioner told him that he did not intend to shoot into the car, but that his "wrist snapped" and the gun just "went off." (*Id.* at 39.) Gibson flashed his lights at Siggers, and the two cars pulled over again, and it discovered that Mason had been shot. (1/20/04 Trial Tr. at 86-87; 1/21/04 Trial Tr. at 35.)

Eventually Mason was driven to the hospital. (*Id.* at 60.) Siggers and McKinney also went to the hospital and spoke to the police there, but Petitioner went home. (*Id.* at 79.) Three days later, Petitioner went to the police and admitted to firing the gun toward the roof of the car and shooting Mason:

I took the gun out of the trunk of the car. I walked between the two cars and I [fired] one time in the air. I then pointed the gun at the roof of Kimberly's car and I pulled the trigger again. After that I went and got back in the car with Dave.

(*Id.*)

McKinney and Gibson testified at trial, but Siggers did not. Pursuant to defense counsel's arguments that Siggers's testimony was crucial to Petitioner's defense, the trial court instructed the prosecution, on two separate occasions, to make efforts to find Siggers. (1/20/04 Trial Tr. at 148, 1/21/04 Trial Tr. at 113.) The trial court, finding that the prosecution failed to exercise due diligence in trying to locate Siggers, instructed itself that his testimony would have been favorable to Petitioner. (1/29/04 Trial Tr. at 5.) Despite this, the court found beyond a reasonable doubt that Petitioner "knowingly creat[ed] a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions." (1/29/04 Trial Tr. at 30.) The court convicted Petitioner of second-degree murder, felon in possession of a handgun, felonious assault, and felony firearm. (1/29/04 Trial Tr. at 32).

On November 15, 2005, the Michigan Court of Appeals denied Petitioner's appeal and affirmed his convictions, but it remanded for a clerical correction of Petitioner's judgment of sentence. The Michigan Supreme Court denied leave to appeal. Petitioner then filed a motion for relief from judgment in the trial court alleging that the prosecutor's failure to produce Siggers amounted to prosecutorial misconduct, and that his appellate attorney was constitutionally defective for failing to raise this issue on appeal. The trial court denied the motion. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal in one sentence with a general

citation to the Michigan Court Rule 6.508(D).

In his petition, Petitioner alleges that (1) the trial court made erroneous conclusions of law in rejecting the lesser offense of manslaughter, (2) there was insufficient evidence to convict him of second-degree murder, (3) he was denied a fair trial by the prosecutor's failing to produce Siggers at trial, and (4) his appellate counsel was ineffective in failing to address the prosecutorial misconduct issue direct appeal. Claims (1) and (2) were raised on direct appeal; claims (3) and (4) were raised for the first time in Petitioner's post conviction motion in the state trial court.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's habeas corpus review of state-court decisions and imposes the following standard of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A federal habeas court may issue the writ under the "contrary to" prong of § 2254(d)(1) if the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

4

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam). The federal court may grant relief under the "unreasonable application" clause if the state court "'identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quotation marks omitted). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather it "must have been 'objectively unreasonable.'" *Id.* at 520-21.

"AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). When reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct and the applicant has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

### A. Erroneous "Conclusions of Law" Claim

Petitioner argues that the trial court made erroneous conclusions of law when it rejected the lesser offenses of involuntary or voluntary manslaughter. Specifically, Petitioner argues that the trial court erred by finding him guilty of second-degree murder without explaining in detail why his actions did not constitute manslaughter. (Pet. 39.) In rejecting Petitioner's claim, the Michigan Court of Appeals stated:

In actions tried without a jury, the trial court, on the record or in a written opinion, must find the facts specially and state separately its conclusions of law regarding contested matters. MCR 2.517(A)(I); MCR 6.403; *People v Feldmann*, 181 Mich App 523,534; 449 NW2d 692 (1989). The findings and conclusions are sufficient if brief, definite, and pertinent, without overelaboration of detail or particularization of facts. MCR 2.517(A)(2). A trial court's duty is satisfied when it is evident that the court was aware of the relevant issues and correctly applied the law. See *People v Smith*, 211 Mich App 233, 235; 535 NW2d 248 (1995). This Court reviews a trial court's findings of fact for clear error. MCR 2.613(C). A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake was made. *People v Parker*, 230 Mich App 337, 339; 584 NW2d 336 (1998).

Here, the trial court fully summarized the facts, and correctly focused on the elements of the charged crimes. The trial court provided detailed evidence supporting its finding that defendant was guilty of second-degree murder and, as noted above, there was sufficient evidence to sustain the conviction. Further, although the court did not over-elaborate, the court explicitly rejected defendant's argument that he should be convicted of common-law manslaughter under a gross negligence theory, or intentionally aiming a firearm without malice. Contrary to defendant's claim, there is no indication that the trial court's findings were inaccurate, or that its conclusions of law were incorrect. After reviewing the entire record, we are not left with a definite and firm conviction that a mistake was made.

*People v. Jiles*, No. 254934, 2005 WL 3050326, at *2 (Mich. Ct. App. Nov. 15, 2005).

The court agrees with the state appellate court's reasoning.

Moreover, Petitioner's argument raises a claim based on state substantive law, and, as such, is not cognizable under habeas review. Petitioner's argument is that it was error to convict him of second degree murder because "there were facts indicating that defendant committed something less than second degree murder. Put bluntly, [the trial court] misapplied the law to facts . . . ." (Pet. 41.) Petitioner's argument therefore reduces to an assertion that the facts found by the trial court do not amount to second degree murder. As such the claim is not a question of federal law and was squarely

answered by the Michigan Court of Appeals when it resolved Petitioner's direct appeal.

## B. Insufficiency of Evidence Claim

Petitioner claims that the evidence presented at his trial was insufficient to support the trial judge's verdict on the second-degree murder charge because the prosecution failed to prove malice of aforethought beyond a reasonable doubt. The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove "all elements of the offense charged, and must persuade the fact finder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993) (citations omitted). A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

Review of challenges to the appellate court's sufficiency of evidence determination proceeds under the "unreasonable application" prong of AEDPA; a federal habeas court must determine, after giving substantial deference to the state appellate court's sufficiency determination, whether its application of the *Jackson* standard was unreasonable. *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). Thus, even if this court finds that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," *Jackson*, 443 U.S. at 324, the court will only grant habeas relief if the appellate court was "objectively unreasonable" in concluding to the contrary, *Wolfenbarger*, 595 F.3d at 653. Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that

it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436

(6th Cir. 2007). This standard presents a "very difficult hurdle" for a habeas petitioner.

*Id.* In reviewing the sufficiency of the evidence to support a court's verdict, this court

must do so "with explicit reference to the substantive elements of the criminal offense as

defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting

*Jackson*, 443 U.S. at 324 n.16). Under Michigan law, a conviction for second-degree

murder requires proof of: "(1) a death, (2) caused by an act of the defendant, (3) with

malice, and (4) without justification or excuse." *People v. Aldrich*, 631 N.W.2d 67, 79-80

(Mich. Ct. App. 2001) (quoting *People v. Goecke*, 579 N.W.2d 868, 878-79 (Mich.

1998)). "The sole element distinguishing manslaughter and murder is malice," *People*

*v. Mendoza*, 664 N.W.2d 685, 690 (Mich. 2003), which is defined as "the intent to kill,

the intent to cause great bodily harm, or the intent to do an act in wanton and wilful

disregard of the likelihood that the natural tendency of such behavior is to cause death

or great bodily harm," *Goecke*, 579 N.W.2d at 878. Malice for second-degree murder

can be inferred from the facts and circumstances surrounding the killing, or from

evidence that the defendant "intentionally set in motion a force likely to cause death or

great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998);

*People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). "Malice may also be inferred

from the use of a deadly weapon." *Carines*, 597 N.W.2d at 136.

The court agrees with the Michigan Court of Appeals: "[a] rational trier of fact

could reasonably infer that defendant acted with malice by intentionally discharging a

loaded handgun into the roof of an occupied car" after considering evidence that he said

"I should shoot you, bitch" to the owner of the car where the victim was seated. *Jiles*,

2005 WL 3050326, at *2.  Moreover, the court agrees with the lower court that "the trial court, as the trier of fact, was entitled to accept or reject" Petitioner's assertion that he was "merely engaged in horseplay." *Id.*  There was testimony that, after an argument between Gibson and McKinney, Petitioner got out of Gibson's car, got a gun from its trunk, and fired it twice while standing between the two cars.  Petitioner admitted to the police that he fired the gun "once in the air, and once in the roof of the car."  This evidence is more than sufficient to allow a rational trier of fact to find malice.  Further, under the more deferential "objectively unreasonable," the evidence was certainly not "so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor."

Petitioner also argues that because the prosecution did not disprove provocation, and therefore disprove voluntary manslaughter, there was insufficient evidence that he acted with malice as required for second-degree murder.  But, "[t]he due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense."  *Coulier v. Bell*, No. 04-10345, 2006 WL 2828651, at *4 (E.D. Mich. Oct. 3, 2006) (citing *Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1998)).  "[I]f an ingredient of a crime is not an element of the offense and does not negate an element, . . . a state law can properly shift the burden of proving that factor onto the defendant."  *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2001), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003).

In Michigan, the absence of provocation is not an element which the prosecution must prove for a conviction of second-degree murder.  *See Cook v. Stegall*, 56 F. Supp.

2d 788, 795-96 (E.D. Mich. 1999) (citing *People v. Deason*, 384 N.W.2d 72 (1985)).

Thus, contrary to Petitioner's claim, the Government was not required to disprove

provocation.  And, regardless, a finding of no provocation would have been appropriate

based on the evidence, which, other than the argument between Gibson and McKinney

before the shooting, contained no support of provocation.

### C.  Prosecutorial Misconduct and Ineffective Assistance of Counsel

Petitioner's remaining habeas claims, prosecutorial misconduct and ineffective

assistance of appellate counsel for failing to raise the prosecutorial misconduct issue on

appeal are interrelated and will be addressed together; Petitioner has procedurally

defaulted his prosecutorial misconduct claim and, because his ineffective assistance of

counsel claim founders, the default is not excused.

The Sixth Circuit has adopted a four-part test to determine whether a claim has

been procedurally defaulted:

> (1) the court must determine that there is a state procedural rule with
> which the petitioner failed to comply; (2) the court must determine whether
> the state courts actually enforced the state procedural sanction; (3) the
> state procedural rule must have been an adequate and independent state
> procedural ground upon which the state could rely to foreclose review of a
> federal constitutional claim; and (4) if the court has determined that a state
> procedural rule was not complied with and that the rule was an adequate
> and independent state ground, then the petitioner must demonstrate that
> there was cause for his failure to follow the rule and that actual prejudice
> resulted from the alleged constitutional error.

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   "Whether a state court has

actually enforced a procedural sanction depends on whether the last state court from

which the petitioner sought review . . . invoked the stated procedural rule as a basis for

its decision to reject reviewing the petitioner's federal claims."  *Ivory v. Jackson*, 509

F.3d 284 (6th Cir. 2007) (quotation marks omitted).

> Where the last state court decision is silent or unexplained as to its reasons for not granting relief, the federal court may "look through" that judgment and assume that it relied on the last reasoned judgment issued in the course of the petitioner's state appeals. That prior judgment's rationale is then taken as the state court's basis for denying relief.

*Id.*

Petitioner raised the prosecutorial misconduct claim for the first time in a post-conviction motion for relief in the state trial court. The post-conviction trial court rejected the claim in a reasoned, multi-page opinion. The reasoning was procedural: Petitioner defaulted on the claim because he failed to raise it on direct appeal. The Michigan Supreme Court and the Michigan Court of appeals denied review in one sentence, citing to Michigan Court Rule 6.508(D). In *Ivory*, the Sixth Circuit held that if (1) a claim was raised for the first time in a post-conviction motion; (2) the trial court did not address the merits of the claims; and (3) the Michigan appellate courts deny review based solely on a general cite to Rule 6.508(D); then the claim is procedurally defaulted. *Id.* at 291-93. Such is the case here; thus, Petitioner procedurally defaulted on his prosecutorial misconduct claim.

To overcome procedural default a petitioner must demonstrate either: cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim; or that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To establish that a miscarriage of justice would result from the failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).

Petitioner claims that ineffective assistance of counsel excuses his procedural default. In order for attorney error to constitute cause, it must rise to the level of ineffective assistance of counsel under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Under *Strickland*, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91, 694. Judicial scrutiny of counsel's performance must be "highly deferential," and a defendant will only overcome presumption that counsel was effective if he can identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 689-90.

Here, the issues appellate counsel did raise on direct appeal were well-argued, and the Michigan Court of Appeals issued a thorough opinion addressing the issues. The Sixth Amendment right to counsel does not require an appellate attorney to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the Supreme Court stated in *Barnes*, "[a] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular'—in a verbal mound made up of strong and weak contentions." *Id.* at 753. In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Id.* at 751 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Petitioner is

unable to demonstrate that appellate counsel was unreasonable in failing to raise a claim of prosecutorial misconduct.

But even assuming Petitioner succeeds on his ineffective assistance of counsel, he cannot show that prejudice flowed from the supposed violation of his supposed federal right to call Siggers. The evidence against Petitioner was overwhelming, and even if Siggers had testified in Petitioner's defense, the trial court likely would have discredited it because of Siggers's close relationship to Petitioner.[1] Further, the trial court instructed itself that Siggers' testimony would have been favorable to Petitioner.

Petitioner also cannot show that his claim should be reviewed in spite of the procedural default based on a potential miscarriage of justice. The miscarriage of justice exception is a narrow one. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To invoke this narrow exception, a petitioner is required to support his allegations of constitutional error with new reliable evidence of his actual innocence of the crime for which he is imprisoned. *Id.* Petitioner admitted to shooting a gun into the roof of a car with four passengers. Again, the evidence against Petitioner was overwhelming. Petitioner has made no argument and presents no new evidence to show that he is actually innocent. Accordingly, denying to review Petitioner's prosecutorial misconduct claim will not result in a miscarriage of justice.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal

---

[1] At the preliminary examination, Siggers testified that he and Petitioner had been friends for longer than five or six years. (10/15/03 Prelim. Exam Tr. at 40.)

the denial of a habeas petition for relief from either a state or federal conviction.[2]  28

U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made

a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong.  *See

Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by

demonstrating that . . . jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, a district court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of the

petitioner's claims.  *Id.* at 336-37.  The court concludes that jurists of reason would not

find the court's assessment of the constitutional claims debatable or wrong.  The court

thus declines to issue Petitioner a certificate of appealability.

## V.  CONCLUSION

IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] is

DENIED.

---

[2] Rule 11 of the Rules Governing Section 2254 Cases in the United States
District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or
deny a certificate of appealability when it enters a final order adverse to the applicant."
Rule 11(a), 28 U.S.C. foll. § 2254.

IT IS FURTHER ORDERED that the court DECLINES TO ISSUE a certificate of

appealability.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 30, 2010, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522